IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 15-256 |
| | ) | |
| WILLIAM CHAFFIN | ) | |
| | ) | |
| Defendant. | ) | Electronically Filed |

**MOTION TO REDUCE SENTENCE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

AND NOW COMES the defendant, William Chaffin, through his attorney, Paul Jubas, Esquire and respectfully moves this Court for an order reducing his sentence based on the "extraordinary and compelling reasons" discussed herein pursuant to the recently amended 18 U.S.C. § 3582(c)(1)(A)(i):

1.     On September 1, 2017, Mr. Chaffin pled guilty to counts 1-4 of his indictment.[1] Mr. Chaffin was sentenced by this Honorable Court to a term of imprisonment of 15 years at each count, to run concurrently.

2.     Mr. Chaffin has been in custody in connection with the present offenses since December 10, 2015.

---

[1] Count 1: violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), in violation of 21 U.S.C. § 846;
Counts 2-4: violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)

3. This Court has jurisdiction over the within motion because The President signed the First Step Act into law on December 21, 2018.

4. Among the law's changes, Congress amended the compassionate release provision, 18 U.S.C. § 3582(c)(1)(A)(i), to "increas[e] the use and transparency of compassionate release." First Step Act of 2018, § 603(b), Pub. L. 115-391, 131 Stat. 5194, 5239 (Dec. 21, 2018).

5. The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," *or* after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id*.

6. This Court has jurisdiction to consider Mr. Chaffin's motion for reduction of sentence because Mr. Chaffin submitted a request for release and that requested was ignored and/or rejected. See Exhibit "A", attached hereto.

7. This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i). That provision states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission[.]"

8.     Congress delegated to the U.S. Sentencing Commission (the "Commission") the responsibility for defining the term "extraordinary and compelling reasons." *See* 28 U.S.C. §994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[] . . 3582(c) of title 18"). The Commission then envisaged the following factual considerations: (i) the medical condition of the defendant; (ii) the age of the defendant; (iii) the family circumstances of the defendant; and (iv) "other reasons" as determined by the BOP. U.S.S.G.§1B1.13, Application Note 1(A). In fact, the commentary explicitly states that the compelling reason(s) could have been foreseen or even present at the time of sentencing. U.S.S.G. § 1B1.13, Application Note 2. Even if the reason "reasonably could have been known or anticipated by the sentencing court[, that fact] does not preclude consideration for a reduction." *Id.*

9.     As the Commission's language indicates, extraordinary and compelling reasons for a sentence reduction may exist when a defendant is not elderly, ill or having family difficulties. While the statement does authorize the Director of the BOP to determine when such "other reasons" might warrant reduction in a particular case, the Commission has not amended these statements since the passage of the First Step Act. Such language is now irreconcilable with the revised statute which allows a defendant to bring a Section 3582 motion without any response from the BOP.

10. As such, that portion of the statement is *not* binding upon a sentencing court as the Guidelines are advisory only, *see United States v. Booker*, 543 U.S. 220 (2005), and such instruction is inconsistent with the text and legislative intent of the First Step Act. "[B]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *United States v. Cantu-Rivera*, 2019 WL 2578272, at *2 n.1; *see also Cantu*, 2019 WL 2498923, at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of the sentence-modification provisions under § 3852." (emphasis in original)). **Accordingly, "[u]nder the First Step Act, it is for the court, not the Director of the Bureau of Prisons to determine whether there is an 'extraordinary and compelling reason' to reduce a sentence."** *Maumau*, 2020 U.S. Dist. LEXIS 28392, at *4. *Accord United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019); *United States v. Beck*, No. 13-CR-186-6, 2019 WL 2716505, at *5–6 (M.D.N.C. June 28, 2019); *United States v. Fox*, No. 14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Rivernider*, No. 10-cr-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019); *United States v. Bucci*, No. 04-10194, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019); *United States v. Brown*, No. 05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. Urkevich*, No. 03-CR-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Dusenbery*, No. 91-cr-291, 2019 WL 6111418, at *3 n.3 (N.D. Ohio Nov. 18, 2019); *United States v. Valdez,* No. 98-cr-0133-01, 2019 WL 7373023, at *2–3 (D. Alaska Dec. 31, 2019); *United States v. Schmitt,* No. CR12-4076, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020).

11.     When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in §3553(a) to determine whether a sentencing reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).

12.     COVID-19[2] is a novel infectious disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a virus closely related to the SARS virus. [3] In its least serious form, COVID-19 can cause illness including fever, cough, and shortness of breath. However, for individuals who become more seriously ill, a common complication is bilateral interstitial pneumonia, which causes partial or total collapse of the lung alveoli, making it difficult or impossible for patients to breathe. Thousands of patients have required hospital-grade respirators, and COVID-19 can progress from a fever to life-threatening pneumonia with what are known as "ground-glass opacities," a lung abnormality that inhibits breathing.[4]

13.     The virus is thought to spread[5] mainly between people who are in close contact with one another (within about 6 feet) through respiratory droplets produced when an infected person coughs or sneezes. It also may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes. What doctors and experts are calling "community spread" is at the root, and "social distancing" is being enforced as the best method of prevention.  Social distancing means, in essence, isolating oneself from other people as much as possible: working from home, avoiding

---

[2] Centers for Disease Control, Coronavirus 2019, https://www.cdc.gov/coronavirus/2019-ncov/index.html
[3] Briefing from the White House Coronavirus Task Force, March 12, 2020. Available at: https://www.cdc.gov/coronavirus/2019-ncov/index.html.
[4] "Ground Glass Opacification," Radiopaedia.com, last accessed: March 12, 2020.
[5] Centers for Disease Control, Coronavirus Factsheet, April 15, 2020: https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

travel, avoiding crowds and contact with others, not touching common surfaces, and generally staying at least 6-12 feet from other people as much as possible.

14.     On March 11, 2020, a study was submitted for peer review suggesting that the COVID-19 virus is airborne, and can remain viable in the air for up to three hours after becoming aerosolized.[6] The virus can get into the air when someone who is infected, even if they are asymptomatic, breathes, coughs, or sneezes, or if their bodily fluids are released into the air. The study also confirms earlier reports that the virus can remain active and transmissible on plastic, metal, and other surfaces for up to three days.

15.     Experts note that 25% of people who acquire COVID-19 are asymptomatic (do not know they have it – since they do not show signs or symptoms) and pass it on to more susceptible people with immunocompromised immune systems.  The immunocompromised will show these signs in a more fatal way.

16.     The Centers for Disease Control (CDC) National Center for Immunization and Respiratory Diseases has issued recommendations for safety precautions that individuals and communities should take to lessen the further spread of the illness and to protect oneself from contracting it. Among those measures are frequent, thorough hand-washing, avoiding touching one's own face or other people's faces, the use of alcohol-based hand sanitizers when soap and water are not available, frequent cleaning with antiseptic cleansers of frequently touched items and surfaces, and social distancing.

---

[6] "Tests Indicate Coronavirus can Survive in the Air," John Bowden, *The Hill*, March 11, 2020, available at: https://thehill.com/policy/healthcare/487110-tests-indicate-coronavirus-can-survive-in-the-air

17.     The unthinkable spread of the global Covid-19 pandemic is killing people who have pre-existing medical conditions, like Mr. Chaffin, at alarming rates of approximately 11% percent. Mr. Chaffin faces a serious risk of dying in prison if infected. *See* "Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) — United States, February 12–March 16, 2020," Centers for Disease Control and Prevention Report (March 18, 2020), available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm.

18.     On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, COVID-19, as a pandemic.[7] As of June 24, 2020, COVID-19 has infected at least 9.2 million people worldwide, leading to at least 478,320 deaths.[8] In the United States, approximately 2,374,580 have been infected, leading to 121,546 deaths[9] These numbers almost certainly underrepresent the true scope of the crisis as test kits in the United States have been inadequate to meet demand. The White House has projected that up to 240,000 Americans may die from COVID-19.

19.     Mr. Chaffin asks the Court to recognize that on March 26, 2020, Attorney General William Barr issued a memorandum to the Director of the Federal Bureau of Prisons directing that

---

[7] "WHO Characterizes COVID-19 as a Pandemic," World Health Organization (March 11, 2020), available at https://bit.ly/2W8dwpS.
[8] "Coronavirus Map: Tracking the Global Outbreak," *New York Times* (June 24, 2020), available at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html?action=click&pgtype=Article&state=default&module=styln-coronavirus&variant=show&region=TOP_BANNER&context=storyline_menu?action=click&pgtype=Article&state=default&module=styln-coronavirus&variant=show&region=TOP_BANNER&context=storyline_menu.
[9] *Id.*

inmates vulnerable to COVID-19 be transferred to home detention. *See* Exhibit "B", Memorandum of Attorney General William Barr to Director of Bureau Prisons. Attorney General Barr issued another memorandum providing the Bureau of Prisons with further guidance on April 3, 2020. *See* Exhibit "C", Memorandum of Attorney General William Barr to Director of Bureau of Prisons. This guidance expanded the eligibility for home confinement to include all at-risk inmates, not only those inmates that were previously eligible for transfer. For some reason or reasons, there has been a delay in implementing this directive.

20. Mr. Chaffin has been diagnosed with diabetes and hypertension. He is also treated and takes medication for high cholesterol and heart disease. Hypertension was the most common comorbidity (30%) according to one report studying COVID-19 and comorbidities.[10]

21. It is respectfully submitted that, in light of the current, unparalleled COVID-19 pandemic, Mr. Chaffin's compromised immune system stemming from high blood pressure/hypertension satisfies the "extraordinary and compelling reasons" standard under § 3582(c)(1)(A)(i), as elaborated by the Sentencing Commission in U.S.S.G. § 1B1.13.

22. The threat of a massive COVID-19 infestation in the federal prison system is real and pervasive. *See* Exhibit "D" attached hereto, Affidavit of Dr. Brie, Williams, M.D. Professor of Medicine at the University of California, San Francisco. As with all correctional facilities, Mr.

---

[10] Although undersigned counsel was unable to obtain copies of Mr. Chaffin's medical records from the BOP, the US Attorney's Office has been sending inmate medical records after the initial filing of the Motions to Reduce Sentence. Therefore, undersigned counsel will include these records, once received, in the Reply to the Government's Response to this Motion.

Chaffin is housed in close quarters and shares all showers, toilets and sinks. The influx of COVID-19 on prisoners such as Mr. Chaffin is, by itself, an appropriate extraordinary and compelling reason for modest reduction in his sentence and early release.

23.     As June 10, 2020, 523 inmates have been diagnosed with COVID-19 at FCI Elkton.[11] As of May 11, 2020, nine inmates have died at FCI Elkton.[12]

24.     If granted allowed to serve the remainder of his sentence at home, Mr. Chaffin will reside at 624 Palmer Road, Adah, PA 15410 with his 9 year old son, Ameir Chaffin and his wife Anitra Dues, who are the only individuals occupying the home. Mr. Chaffin will be provided for financially by his wife who is currently employed by the American Red Cross as a supervisor. William is medically serviced by his primary care physicians located in Uniontown, PA. He will get his medications from the CVS located on Rt. 21 in Masontown, PA, who also offers a delivery service. All conditions imposed upon Mr. Chaffin's home confinement will be upheld.

25.     Consideration of the relevant sentencing factors in 18 U.S.C. §3553(a) justify a resentence to home detention.  The current pandemic of COVID-19 coupled with Mr. Chaffin's compromised medical condition and incarcerated state weigh in favor of his release from prison. Mr. Chaffin is not a danger to the community; suffers from serious medical issues; and further because respect for the law and general deterrence, other notable Section 3553(a) factors, would

---

[11] No new COVID-19 cases at Ohio federal prison, Tullos, Julia, Fox19.com/2020/06/10/no-new-covid-cases-ohio-federal-prison/
[12] FCI Elkton reports ninth COVID-19 death, Mahoning Matters Staff, Mahoningmatters.com, https://www.mahoningmatters.com/local-news/fci-elkton-reports-ninth-covid-19-death-2335754

not be undermined by converting the remainder of his sentence to home confinement given the cataclysmic events of the current pandemic.

26. Mr. Chaffin's pre-existing health condition and the rapidly advancing COVID-19 outbreak, together with the prison's inflexibility to give Mr. Chaffin the ability to take self-care measures directed by the CDC to remain safe during the outbreak, warrant a reduced sentence in his case.

27. Mr. Chaffin asks this Court to consider the thoughtful opinion of its colleague, the Honorable Anita Brody from the United States District Court for the Eastern District of Pennsylvania in *United States of America v. Jeremy Rodriguez*, Crim No. 03-271, (memorandum opinion attached hereto as Exhibit "E") and exercise its jurisdiction under the First Step Act to moderately reduce Mr. Chaffin's sentence to home detention.

.

28. Because Mr. Chaffin has exhausted his administrative efforts to obtain release and in light of Mr. Chaffin's increased susceptibility to acquire COVID-19 and the risk of death due to his weakened immune system, this Court should exercise its jurisdiction under the First Step Act and reduce Mr. Chaffin's sentence to a period of home detention.

WHEREFORE, Defendant William Chaffin respectfully requests this Court consider the instant motion on an expedited basis and resentence him to a term of home detention.

                                                                Respectfully submitted,

        s/ *Paul R. Jubas*
        Paul R. Jubas, Esquire
        Pa. I.D. No. 311832
        P.O. Box 10704
        Pittsburgh, PA 15203
        (412) 230-0023
        Attorney for Defendant,
        WILLIAM CHAFFIN