IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 15-256 |
| | ) | |
| WILLIAM CHAFFIN | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Timothy M. Lanni, Assistant United States Attorney for said District, and respectfully submits this Response in Opposition to Defendant Chaffin's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Doc. No. 1071.

Chaffin seeks a reduction in his prison sentence under 18 U.S.C. § 3582(c)(1)(A), often described as the "compassionate release" statute, based on his claim that he has a heightened risk of contracting COVID-19.  But he does not meet the statute's requirements for a reduction in sentence, and his Motion must be denied.   First, Chaffin has failed to give the Bureau of Prisons (BOP) 30 days to process his request for release, as required by § 3582(c)(1)(A).  Defendant's counsel has simply sent an email to a general email inbox at FCI Elkton. *See* Def. Exhibit A. Defendant has not shown that this request was received by the warden, never mind, considered by him. This is not a proper request that would allow FCI Elkton to make an informed assessment of Chaffin's request. Accordingly, this process has contravened the established protocol for assessing compassionate release claims and defendant's motion must be denied. Second, while Chaffin may have a qualifying medical condition, namely diabetes, a reduction in Chaffin's sentence would not

be consistent with § 1B1.13, as the defendant is a danger to the safety of the community, and would not be consistent with the § 3553(a) factors as required by § 3582(c)(1)(A).

Chaffin has a dangerous and extensive record dating back to the mid-1990s. He has been convicted of numerous drug and firearm offenses, resisting arrest, as well as two assaults on law enforcement. In the instant case, Chaffin was convicted and sentenced to 15 years imprisonment for leading a large cocaine and cocaine base trafficking network. When a search warrant was executed at Chaffin's home in November of 2015, law enforcement recovered two handguns, an assault rifle, and numerous rounds of matching ammunition. Chaffin accepted responsibility for possessing these firearms and ammunition as part of his plea agreement. Due to his past record and his conduct in the instant case, Chaffin was exposed to a possible guideline range sentence of 262 to 327 months as a Career Offender. As a result of an 11(c)(1)(C) plea agreement, Chaffin was sentenced to a term of 180 months, significantly under the bottom of his advisory guideline range. Part of this sentence included a mandatory minimum 120 month sentence. Now after serving less than a third of his sentence, Chaffin seeks to be released.

Releasing Chaffin after serving such a short term would completely eviscerate the sentencing factors enumerated in § 3553(a). After being exposed to a possible guideline range of over 27 years, Chaffin would be released in less than 5 years. This type of sentence reduction would not reflect the nature and seriousness of the current counts of conviction or Chaffin's prior record. Further, this reduction would not serve to deter defendant with a dangerous record of recidivism. In fact, such a reduction may actually embolden defendant to reoffend. Defendant would be released knowing that he would be able to rely on similar arguments to escape a mandatory minimum term in the future. Finally, this reduction would not serve to protect the public. This reduction would release a defendant with a 25 year record of firearm possession, large

scale drug trafficking, and violent, assaultive behavior back into the community during a nationwide pandemic.

It is also worth noting that defendant in his motion also may be seeking release to home confinement through a BOP program as well as a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  In support of his request for release on home confinement, defendant cites memos from the Attorney General to the BOP regarding the home confinement release program. *See* Def. Exhibits B and C. It is unclear if defendant has actually sought release under this program. Given defendant's dangerous and violent history, defendant would not be a good candidate for this program and the Government would not consent to his release. However, the defendant's unwillingness to properly pursue this remedy or his administrative remedies for 18 U.S.C. § 3582(c)(1)(A) underscores the problems with his motion.

Ultimately, because Chaffin's has not met the statutory requirements for a reduction in sentence under § 3582(c)(1)(A), his motion must be denied.

## BACKGROUND

Defendant was charged with a large cocaine conspiracy in Count 1, multiple counts of cocaine distribution in Counts 2 - 4, and possession of firearms and ammunition in Count 5 of a seven Count indictment. Doc. No. 21. The Government moved for defendant's detention and after a detention hearing, Judge Kelly ordered defendant detained pending trial. Doc. No. 168. Thereafter, defendant moved for a pre-plea criminal history investigation report. Doc. No. 332. The Probation Officer determined that defendant was likely a Career Offender and an Armed Career Criminal. Doc. No. 372.

On February 3, 2017, defendant plead guilty to Counts 1 – 4 of the Indictment and accepted responsibility for Count 5. Doc. No. 695. A provision of the plea agreement called for an

11(c)(1)(C) plea of 15 years (180 months). *Id.*  This Court deferred its decision on accepting the plea until a future date prior to sentencing. Doc. No. 696.

On June 13, 2017, the Court indicated that it would accept the plea agreement. Doc. No. 830. On August 15, 2017, defendant filed positions with respect to sentencing factors which challenged certain enhancements pursuant to the plea as well as the possible finding that he was a Career Offender. Doc. No. 866. Due to defendant's submissions, the Court vacated its June 13, 2017 notice that it would accept the plea agreement. Doc. No. 868. On August 31, 2017, the Court indicated that it would accept the plea agreement. Doc. No. 884.

On September 1, 2017, this Court sentenced defendant to 15 years imprisonment pursuant to the plea agreement. Doc. No. 888.

Despite serving less than a third of his sentence and less than half of the mandatory minimum term, defendant now moves to reduce his sentence.

## ARGUMENT

### I.  Chaffin's Motion Is Premature Because Less Than 30 Days Have Elapsed Since He Raised A Proper Claim With BOP and Because He Has Not Exhausted His Administrative Appeals.

18 U.S.C. § 3582(c)(1)(A) – as amended by the First Step Act of 2018 – allows a court to reduce a term of imprisonment based on "extraordinary and compelling" circumstances, but only:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Here, on May 19, 2019, defendant's counsel submitted an email request to an FCI Elkton inbox within the BOP requesting consideration for compassionate release.  However, Chaffin does not state, and the record does not indicate, whether

this was the proper procedure for submitting a compassionate release request to the warden of FCI Elkton.  *See* 28 C.F.R. § 571.61 ("A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden.").  Additionally, there is no evidence that the warden ever properly received this email or processed this request.

More importantly, to the extent his request was properly before the warden, Chaffin did not appeal the denial of that request to the BOP Regional Director's Office and to the BOP's Office of General Counsel under 28 C.F.R. §§ 542.15 and 571.63.

Because Chaffin has not waited "30 days from the receipt of such a request by the warden" and has not "fully exhausted all administrative rights to appeal" BOP's decision, his motion is premature because he has not met the requirements of 18 U.S.C. § 3582(c)(1)(A).  As the Third Circuit recently noted, "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added – and critical – importance" during the ongoing pandemic.  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  The Third Circuit further noted that "fail[ure] to comply with § 3582(c)(1)(A)'s exhaustion requirement," "presents a glaring roadblock foreclosing compassionate release at this point." *Raia,* 954 F.3d at 597.  Because Chaffin has not fulfilled that requirement, the Court should similarly dismiss Chaffin's § 3582(c)(1)(A) motion as premature, without prejudice to renewal 30 days after Chaffin has presented a request to the warden, or after he has exhausted his administrative appeals within BOP.[1]

---

[1]      Section 3582(c) states that a "court may not modify" a term of imprisonment except in particular circumstances.  It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," Landgraf v. USI Film Productions, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" Bowles v. Russell, 551 U.S. 205, 212-13 (2007) (quoting Eberhart v. United States, 546 U.S. 12, 16 (2005) (per curiam)).  Section 3582(c) accordingly has been understood as providing express, but limited, statutory authorization to modify otherwise final sentences. "Because section 3582 sets forth a statutory basis for limiting the district courts' jurisdiction," any "timing requirement" set forth in that section, or a related Rule of Criminal Procedure, is "jurisdictional."  United States v. Higgs, 504 F.3d 456, 464 (3d Cir. 2007).

## II.   Chaffin Has Shown "Extraordinary and Compelling Reasons" for Release as Required by 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c), created by the Sentencing Reform Act of 1984, provides that "[t]he court may not modify a term of imprisonment that has become final except" in limited circumstances.   As relevant here, if BOP or the defendant files a timely motion under § 3582(c)(1)(A) with the district court, *see supra* Part I, the court

> may reduce the term of imprisonment . . . *after considering the factors set forth in section 3553(a)* to the extent that they are applicable, *if it finds that*–
>
> > (i) *extraordinary and compelling reasons warrant such a reduction*…
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*….

18 U.S.C. § 3582(c)(1)(A) (emphasis added).   Section 603 of the First Step Act of 2018 amended § 3582(c)(1)(A) to allow the court to act "upon motion of the defendant" in addition to "upon motion of the Bureau of Prisons," assuming timeliness and the other conditions are met.   Pub. L. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.   However, the First Step Act did not change the substantive definition of "extraordinary and compelling reasons."

The Sentencing Reform Act of 1984 authorized the Sentencing Commission to define "extraordinary and compelling reasons."   *See* Pub. L. 98-473, § 217(a), 98 Stat. 1837, 2019 (enacting 28 U.S.C. § 994).   The Commission has fulfilled these tasks through its policy statement at U.S.S.G. § 1B1.13 and its application notes.   The policy statement echoes § 3582(c)(1)(A)'s requirement that the court determine that "extraordinary and compelling reasons warrant the

---

Even if § 3582(c)(1)(A)'s 30-day requirement is not jurisdictional, it is at least a mandatory claim-processing rule.   See United States v. Alam, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020).   A mandatory rule must be enforced if a party "properly raise[s]" it.   Eberhart, 546 U.S. at 19.   If the Court views the 30-day requirement as a clams processing rule, Chaffin has still not followed § 3582(c)(1)(A)'s requirements, and his motion must therefore be denied as premature.

reduction." U.S.S.G. § 1B1.13(1)(A).  The court must also find that "the defendant is not a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13(2).[2]

Application Note 1 to U.S.S.G. § 1B1.13 sets forth the "extraordinary and compelling reasons" that may justify release under § 3582(c)(1)(A).  "[E]xtraordinary and compelling reasons" include "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 app. note 1.  A defendant must have a *current* illness, such as a "serious physical or medical condition," to meet these criteria.  The risk of contracting a disease *in the future* does not, on its own, satisfy subdivision 1(A).

Chaffin's medical condition, diabetes, has been listed by the CDC as a condition causing "higher risk for severe illness from COVID-19."  Centers for Disease Control and Prevention, "At Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated May 14, 2020).  For that reason, in the context of the COVID-19 pandemic, the Government agrees that Chaffin has a "serious physical or medical condition" that "substantially diminishes" the defendant's ability "to provide self-care within the environment of a correctional facility" during the pandemic, and is therefore an "extraordinary and compelling reason" for release under 18 U.S.C. § 3582(c)(1)(A)(i).  However, given *supra* Part I and III, of the Government's response, defendant's motion should not be granted.

---

[2]      Although the body of the Guideline states that a court may act "[u]pon motion of the Director of the Bureau of Prisons," § 1B1.13, and therefore does not yet include the procedural change made by the First Step Act, that discrepancy is separate from the Application Note's definition of "extraordinary and compelling circumstances."  Thus, the Court should continue to rely upon the Application Note's guidance in evaluating "extraordinary and compelling circumstances."

### III. Although Chaffin Has Shown "Extraordinary and Compelling Reasons," Compassionate Release Is Not Appropriate Under the § 3553(a) Factors and § 1B1.13.

Even if "an inmate has established an extraordinary and compelling reason," assessment of the § 3553(a) factors "will often result in the conclusion that compassionate release should not be granted, except in cases in which the inmate clearly does not present a danger of recidivism or harm to the community and in addition either (a) has a grave condition that would justify compassionate release in ordinary times, or (b) has a relatively short period of time left to serve on the sentence."

Defendant has only served a fraction of his sentence and does not fall into the categories listed above. Further, while this Court can reduce defendant's term below the mandatory minimum sentence, whether or not defendant is subject to a mandatory minimum term and if he or she has fulfilled that term, is a factor this Court can consider. Here, as defendant has not served even half of his mandatory minimum term and less than a third of his agreed upon term, his release is particularly inequitable in light of the § 3553(a) factors.

Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community under § 1B1.13 or otherwise merits release under the § 3553(a) factors. Section 3582(c)(1)(A) requires that this Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" before it reduces a defendant's prison term. Rather, everything before the Court supports that defendant is a very real danger to the community. Here, neither 1B1.13 nor the § 3553(a) factors continue to support the sentence this Court originally imposed, and the defendant's motion should be denied.

Defendant has been convicted of illegally possessing firearms in 1992, 1994, and 1996 and accepted responsibility for possessing numerous firearms and ammunition in this case. Doc. No. 796. Defendant has been convicted of assault in 1995 and 2005. *Id.* This dangerous behavior in

itself is alarming, however, it is particularly troubling when tied to defendant's large scale and organized drug trafficking. In 1996, defendant was convicted for possessing with intent to distribute a large quantity of crack cocaine as well as a firearm. *Id.* In addition to the large bag of crack cocaine, there were smaller bags of crack cocaine for distribution seized by Pittsburgh Police. *Id.* After defendant was released on this offense, he violated parole four times. *Id.* Also in 1996, defendant was convicted of another crack cocaine delivery offense. *Id.*

Defendant's behavior did not decline with age and resulted in the instant case. The instant case was a large scale drug trafficking case in which the defendant was the leader of an organization that flooded Uniontown, PA and Fayette County with large quantities of cocaine. Once again defendant was in possession of firearms and ammunition. These are not isolated actions, but part of defendant's nature. Defendant for twenty five years has been a drug dealer. Many prior convictions and long state prison sentences, including parole revocation sentences, have not deterred defendant. It is clear that these terms in prison and on supervision have not rehabilitated defendant. This type of sentence reduction would once again reaffirm to defendant that a life of crime is worth the consequences. Further, the severe deterrents that the defendant faced in federal court such as the Career Offender Enhancement and Armed Career Criminal Act would have no effect on defendant, and subsequently other defendants, if he would be released after severing a mere fraction of his sentence. There are no § 3553(a) factors that would warrant a reduction of sentence. Rather, all of the factors strongly weigh against defendant's release.

The defendant's personal history and criminal record also suggests that his release may be particularly risky during the ongoing COVID-19 pandemic.  Given his past disrespect for the law, it seems unlikely that Chaffin will now comply with the directives of the CDC and government officials to practice social distancing and to stay at home unless necessary to access life-sustaining

services. Defendant has continually committed serious offenses while not incarcerated and violated his parole and court supervision. It is unlikely that defendant would chose to voluntarily abide by CDC and other health guidelines when he has chosen to violate direct orders from the courts and commit serious offenses. These guidelines would have no deterrent effect on defendant.

Instead, Chaffin may choose to re-associate with his criminal associates in defiance of any stay-home order. That would pose risks to public safety and to public health. And should Chaffin commit further crimes during the COVID-19 pandemic, he may place at risk not only crime victims, but also responding law enforcement officers who would come into contact with him and with each other. Defendant has a history of resisting arrest and assaulting law enforcement officers. His release would put law enforcement and possibly medical personnel forced to respond to his assault behavior at further risk. In light of the troubling times the country is facing during an unprecedented pandemic, Chaffin's release would only further endanger the public.

In short, releasing Chaffin could increase, not decrease, the spread of COVID-19.

## IV. If the Court Orders Compassionate Release, It Should Allow BOP a Reasonable Period of Time for Quarantine and to Process and Screen Chaffin Before Release.

Finally, if the Court orders Chaffin's compassionate release under § 3582(c)(1)(A) – which, for all the reasons stated above, it should not – it should allow BOP to place Chaffin in a 14-day quarantine period and conduct medical clearance before release, in order to minimize the possibility of any spread of COVID-19 from the inmate to the public. Such a period will also allow the BOP a reasonable time to allow the BOP to fulfill its obligations under certain federal statutes. See, e.g., 18 U.S.C. § 3771 (notification of victims and witnesses of inmate's release); 18 U.S.C. §§ 4042(b), (c) (notification of law enforcement officials of inmate's release); 42 U.S.C. § 14135a (collection of DNA samples). In particular, when a prisoner who, like Chaffin, has been convicted of a "drug trafficking crime," BOP must notify in writing "the chief law enforcement

officers of each State, tribal, and local jurisdiction in which the prisoner will reside," "[a]t least 5 days prior to" the prisoner's release.  18 U.S.C. § 4042(b). The U.S. Attorney's Office as well must notify crime victims of any release of the defendant.  18 U.S.C. § 3771(a)(2).

An orderly release process is particularly important during the COVID-19 pandemic, so that BOP can screen the inmate for the virus and arrange for transportation while minimizing the personal interactions required.  For comparison, the Attorney General has directed that inmates released to home detention be placed in a 14-day quarantine, either at a BOP facility or at their post-release residence.  Similar precautions are appropriate for individuals granted compassionate release, for the protection of those inmates, BOP personnel, and others at their release locations.

A brief delay in Chaffin's release will also allow the BOP to make the necessary logistical arrangements for processing his release, including any transportation within the BOP that may be necessary.

However, the need for a delay in release underscores why release under § 3582(c)(1)(A) is not appropriate in this case.  The BOP has taken extensive action to mitigate the spread of COVID-19, such as transferring a significant number of high-risk prisoners to home confinement under § 3624(c)(2) – efforts that will only expand in the near future.  Defendant instead asks this Court to order compassionate release under § 3582(c)(1)(A), but he does not meet that statute's standards.  Preliminarily, he has not satisfied § 3582(c)(1)(A)'s mandatory and jurisdictional exhaustion requirement. Ultimately, however, Chaffin would present a danger to others if released, and the § 3553(a) factors do not support a reduction in his sentence.  This Court may recommend that the BOP include Chaffin among the large numbers of prisoners it will release to home confinement.  But "the mere existence of COVID-19 in society and the possibility that it may

spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597.  This Court may not and should not grant that extraordinary remedy here.

WHEREFORE, the United States respectfully requests that Defendant's Motion for Reduction of Sentence be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By:     /s/ Timothy M. Lanni
        Timothy M. Lanni
        Assistant U.S. Attorney
        Joseph F. Weis, Jr. U.S. Courthouse
        700 Grant Street, Suite 4000
        Pittsburgh, Pennsylvania 15219
        (412) 644-3500 (Phone)
        NJ ID. NO. 11242012